UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER LLOYD, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>MIKAEL SJOBLOM, et al.,<br><br>        Defendants. | Case No.  14-cv-00234-JSC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 23 |

        Plaintiffs Peter Lloyd ("Lloyd") and Ventor Progress AB ("Ventor") sue Mikael Sjöblom and Euro Office Americas, Inc. ("Euro Office") for breach of contract and fraud, among other claims, arising out of Plaintiffs' investments in Euro Office.  Euro Office responded by filing a cross-complaint against Lloyd and Ventor involving a related business venture to develop and market an ergonomic computer mouse that was manufactured in China.  The Court subsequently granted Lloyd and Ventor's motion to dismiss the cross-complaint with leave to amend.  (Dkt. No. 16.)  Now pending before the Court is Lloyd and Ventor's motion to dismiss Euro Office's First Amended Cross-Complaint ("FACC"). (Dkt. No. 23.)  After carefully considering the parties' submissions, the Court finds this motion appropriate for resolution without oral argument, *see* Civil L.R. 7–1(b), and GRANTS in part and DENIES in part the motion to dismiss.

## ALLEGATIONS OF THE FACC

        Euro Office is a Delaware corporation with its principal place of business in Napa, California.  Lloyd is an individual residing in the United Kingdom, and Ventor is a Swedish corporation with its principal place of business in Sweden.  The FACC alleges in relevant part as follows:

        9. On or about November 16, 2009, Cross-defendant Peter Lloyd

entered into a written agreement with Cross-claimant in which he agreed in writing and orally to return 100% of his shares of Euro Office Americas, Inc. and receive equal number of shares in a new Swedish company to eventually be named Euro Office Ergonomi AB. In addition to agreeing to the exchange of ownership shares, Cross-defendant Peter Lloyd agreed to accept the same shareholder agreement in the new company and to convert his debt to shares. A copy of the written portions of the agreement with a translation from Swedish to English is attached as Exhibit 1 and incorporated herein by reference.

10. The transfer agreement before the Swedish corporation was formed was referred to as "Euro Office Holding AB," but when establishing the corporation in Sweden, the name "Euro Office Holding AB was denied by the state, so the second name "Euro Office Ergonomi AB" was chosen as the legal name.

11. On or about February 22, 2010, Cross-claimant forwarded a written agreement to Cross-defendant, Peter Lloyd with details of the transaction regarding moving the operation from Euro Office Americas, Inc. to the new Swedish company Euro Office Ergonomi AB in which on or about February 26, 2010, Cross-defendant, Peter Lloyd agreed to convert his debt to shares, that he agreed to return all shares in Euro Office Americas, Inc., accept equal number of shares in Euro Office Ergonomi, AB., and accept the created stock ledger to shares issued and returned as shown in the agreement. A copy of the written agreement is attached as Exhibit 2 and incorporated herein by reference.

12. On or about February 26, 2010, Cross-claimant forwarded a written agreement to Soren Hornell, president of Cross-defendant, Ventor Progress AB outlining the details of a transaction in which the operation of Euro Office Americas, Inc. would be converted to a new Swedish company Euro Office Ergonomi AB. The agreement detailed the conversion of debt into shares, the return of all shares in Euro Office Americas, Inc., the acceptance of equal number of shares in Euro Office Ergonomi AB, and the acceptance of the evolving stock ledger as debts were transformed into shares, and shares were issued and returned. On or about March 1, 2010, Ventor Progress AB signed and accepted the written agreement. A copy of the written agreement executed by Ventor Progress AB is attached hereto as Exhibit 3 and is incorporated herein by reference.

13. Consistent with the terms of the agreements entered into in Paragraphs 10 and 11 above, Cross-defendants, Ventor Progress AB and Peter Lloyd entered into an agreement to purchase the Swedish corporation to eventually be named Euro Office Ergonomi AB. A copy of the written purchase agreement, with a freely translation from Swedish to English, is attached as Exhibit 4 and is incorporated herein by reference.

(Dkt. No. 17 ¶¶ 9-13.) Further, the minutes of initial shareholder meetings for Euro Office

Ergonomi AB "establish[] the conversion of all shareholders' shares including Peter Lloyd and

Ventor Progress AB's shares to Euro Office Ergonomi AB." (*Id.* at ¶ 14.) As a result, Lloyd and

United States District Court
Northern District of California

Ventor are no longer shareholders in Euro Office and have "no rights with respect to this corporate entity." (*Id.* at ¶ 15.)

Euro Office further alleges that Lloyd breached the February 22, 2010 agreement

> because he now claims that the obligation that is owed to him has not been converted to shares in Euro Office Ergonomi AB, denies his converted ownership interest in Euro Office Ergonomi AB, and he has interfered in the purchase of the assets by Euro Office Ergonomi AB by the wrongful exercise of dominion control over personal property of Euro Office Ergonomi AB, namely 9 cases of trackbar product and 50 cartons of electrical components.

(*Id.* at ¶ 22.)

Also in February 2010, Euro Office "entered into an economic business relationship with Euro Office Ergonomi AB, in which all assets including trademarks and copyrights for Euro Office Americas, Inc. was transferred to Euro Office Ergonomi AB in exchange for relief of all of its liabilities which at the time was estimated to be 77,000 pounds." (*Id.* at ¶ 25.)  Lloyd and Ventor "had knowledge of the economic business relationship in that they were shareholders in both Cross-claimant and Euro Office Ergonomi AB and were involved in the designing and implementing of the transfer of the business from Cross-claimant to Euro Office Ergonomi AB." (*Id.* at ¶ 26.)  Further, Lloyd and Ventor

> conspired to convert property of Euro Office Ergonomi AB from its China manufacture by having it shipped, without approval, to Cross-defendant, Peter Lloyd's facility in England with intent to sell the trackbar product on their own account. Cross-defendants, Peter Lloyd and Venter Progress AB refused to take into consideration the interest in the other investors and creditors in Euro Office Americas, Inc. and Euro Office Ergonomi AB, in which they wrongful exercising dominion and control over personal property of Euro Office Ergonomi AB, namely 9 cases of trackbar product and 50 cartons of electrical components.

(*Id.* at ¶ 27.)  This action "caused disruption in the relationship between Euro Office Americas, Inc. and Euro Office Ergonomi AB in that the asset transfer was completed but the agreed liabilities of Cross-claimant have not been fully paid." (*Id.* at ¶ 29.)

The FACC alleges three causes of action: 1) declaratory relief; 2) breach of contract; and 3) intentional interference with prospective economic damage.

//

United States District Court
Northern District of California

**LEGAL STANDARD**

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.) "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

//

4

**DISCUSSION**

**A.    Euro Office's Late Opposition**

As an initial matter, Lloyd and Ventor request that the Court "not consider" (Dkt. No. 31 at 2) Euro Office's opposition, which was filed one day late.  The Court declines to do so.  Lloyd and Ventor have not demonstrated that they were prejudiced in any meaningful way by the late filing.

**B.    Declaratory Relief (First Cause of Action)**

In its declaratory relief claim, Euro Office seeks "a judicial determination of its rights and duties, and a declaration as to shareholder interests as to [Euro Office] and Euro Office Holding AB, together with the present ownership interest in [Euro Office]." (Dkt. No. 17 ¶ 16.)  Lloyd and Ventor move to dismiss on the following grounds: 1) Euro Office has not adequately alleged the existence of a contract; and 2) the claim is vague and ambiguous.

Federal courts sitting in diversity apply the substantive law of the forum state.  *See Gasperini v. Center for Humanities*, 518 U.S. 415, 427 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural rules.").  For this reason, federal courts consistently apply California Code of Civil Procedure Section 1060 rather than the federal Declaratory Judgment Act when sitting in diversity.  *See, e.g.*, *McKinney v. Google, Inc.*, 2011 WL 3862120, at *8-9 (N.D. Cal. Aug. 30, 2011) (applying Section 1060 to a declaratory relief claim); *see also Smith v. Bioworks, Inc.*, 2007 WL 273948, at *4 n.5 (E.D. Cal. Jan. 29, 2007) ("Plaintiff generally alleges a claim for declaratory relief in his Complaint.  Because this is a diversity action, and because plaintiff alleges that California law applied in this action, the court applies California's declaratory relief statute to plaintiff's claims.").

Section 1060 confers standing on "[a]ny person interested under a written instrument . . . or under a contract" to bring an action for declaratory relief "in cases of actual controversy relating to the legal rights and duties of the respective parties."   Cal. Civ. Proc. Code § 1060.  Thus, in a complaint seeking declaratory relief, "an actual, present controversy must be pleaded specifically and the facts of the respective claims concerning the [underlying] subject must be given."  *City of Cotati v. Cashman*, 29 Cal. 4th 69, 80 (2002); *see also Foster v. Masters Pontiac Co.*, 158 Cal. App. 2d 481, 488 (1958) (holding that the actual controversy element "is met by allegations

5

showing a controversy respecting the rights of parties to a written instrument, accompanied by a request that these rights be determined and declared").  The existence of a contract must be alleged in order for the Court to determine whether a controversy exists regarding the nature of the parties' contractual rights and obligations.  *See Columbia Pictures Corp. v. DeToth*, 26 Cal. 2d 753, 760-61 (1945) (holding that "a complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties *under a contract*") (emphasis added); *see also Brownfield v. Daniel Freeman Marina Hosp.*, 208 Cal. App. 3d 405, 410 (1989) ("The actual controversy requirement concerns the existence of present controversy relating to the legal rights and duties of the respective parties pursuant to contract, statute or order.") (internal quotation marks and citations omitted).

Lloyd and Ventor argue that the declaratory relief claim fails because the alleged contracts that form the basis of the claim (Exhibits 1-3) are not signed by Euro Office and therefore not contracts as a matter of law.  The Court is not persuaded.  Under California law, a contract is "an agreement to do or not to do a certain thing," and a contract can only exist if the parties are capable of contracting, they manifest objective consent, the contract has a lawful object, and there is sufficient consideration.  Cal. Civ. Code §§ 1549–1550; *Cedars Sinai Medical Center v. Mid–West Nat. Life Ins. Co.*, 118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000).  There is no general requirement that a contract be written.  *See* Cal. Civ. Code § 1622 ("All contracts may be oral, except such as are specially required by statute to be in writing.").  Moreover, "where a contract is written, there is no general requirement that it be signed."  *Goff v. G2 Secure Staff LLC*, 2013 WL 1773968 (C.D. Cal. Apr. 22, 2013); *see also Performance Plastering v. Richmond American Homes of California, Inc.*, 153 Cal. App. 4th 659, 668 (2007) ( "[T]he lack of a party's signature does not make a fully executed contract unenforceable.").  Instead, California law only requires a signature where "it is shown, either by parol or express condition, that the contract was not intended to be complete until all parties had signed."  *Angell v. Rowlands*, 85 Cal. App. 3d 536, 542 (1978); *see also Goodworth Holdings Inc. v. Suh*, 239 F. Supp. 2d 947, 958 (N.D. Cal. 2002). The alleged contracts are on Euro Office letterhead and include a signature line for only Lloyd or Ventor; there is no signature line for Euro Office.  Viewing the FACC and the alleged contracts

United States District Court
Northern District of California

1    attached thereto in the light most favorable to Euro Office, the Court cannot conclude that the

2    alleged contracts were not intended to be complete until Euro Office signed them.  Thus, the lack

3    of Euro Office's signature does not warrant dismissal of the declaratory relief cause of action.

4         Lloyd and Ventor further argue that the claim fails because the allegations supporting the

5    claim are "completely nonsensical" and "unintelligible."  (Dkt. No. 23 at 7.)  They also contend

6    that Euro Office has failed to allege that the transfer of shares was ever completed, *e.g.*, that any

7    shares of Euro Office Ergonomi AB were ever issued to Lloyd and/or Ventor.  Again, the Court is

8    not persuaded.  When closely examined and read in the light most favorable to Euro Office, the

9    allegations supporting the claim are not "completely nonsensical" and "unintelligible."  As Lloyd

10   and Ventor's briefing shows, they understand Euro Office's claim and its factual basis; they just

11   do not agree with Euro Office's contentions.  The Court is also not persuaded that the FACC must

12   be dismissed because it fails to allege that shares in Euro Office Ergonomi AB were actually

13   distributed to Lloyd and Ventor.  As noted above, a declaratory relief claim in California is

14   sufficient where it alleges the existence of a controversy regarding the nature of the parties'

15   contractual rights and obligations.  Lloyd and Ventor's argument concerning the parties'

16   performance of the contracts relates to the merits of the declaratory relief claim rather than the

17   sufficiency of the allegations.  In any event, at least with respect to Lloyd, the FACC plainly

18   alleges that shares in Euro Office Ergonomi AB were distributed to him.  (*See* Dkt. No. 17 ¶ 21

19   ("Lloyd's debt was converted to shares in Euro Office Ergonomi AB, [and] equal number of

20   shares in Euro Office Ergonomi AB have been issued to Peter Lloyd.").)

21        Lloyd and Ventor's motion to dismiss the declaratory relief claim is accordingly DENIED.

22   **C.      Breach of Contract (Second Cause of Action)**

23        To state a claim for breach of contract against Lloyd, Euro Office must allege: 1) the

24   existence of a contract; 2) performance by Euro Office or excuse for nonperformance; 3) breach

25   by Lloyd; and (4) damages.  *See First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745

26   (2001).  Euro Office alleges that Lloyd breached the February 22, 2010 agreement

27            because he now claims that the obligation that is owed to him has
             not been converted to shares in Euro Office Ergonomi AB, denies
28            his converted ownership interest in Euro Office Ergonomi AB, and

1

2

> he has interfered in the purchase of the assets by Euro Office Ergonomi AB by the wrongful exercise of dominion control over personal property of Euro Office Ergonomi AB, namely 9 cases of trackbar product and 50 cartons of electrical components.

3   (*Id.* at ¶ 22.)  As Lloyd argues, Euro Office fails to identify any contractual provision that Lloyd's

4   conduct supposedly violated.  While Lloyd's insistence that Euro Office failed to deliver on its

5   promises may be incorrect, it does not follow that such insistence is a contractual violation.  In

6   addition, Euro Office identifies no provision in the contract barring Lloyd from exercising

7   "dominion control" over Euro Office Ergonomi AB's property.  Lloyd's motion to dismiss the

8   breach of contract claim is accordingly GRANTED.

9           The Ninth Circuit has interpreted Rule 15(b) to require a district court to "grant leave to

10  amend . . . unless it determines that the pleading could not possibly be cured by the allegation of

11  other facts."  *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995); *see also Lopez v. Smith*, 203

12  F.3d 1122, 1127 (9th Cir. 2000).  However, "leave to amend may be denied if it appears to be

13  futile or legally insufficient."  *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir.

14  1986).  "It is not an abuse of discretion to deny leave to amend when any proposed amendment

15  would be futile."  *Klamath–Lake Pharmaceutical Ass'n v. Klamath Medical Serv. Bureau*, 701

16  F.2d 1276, 1292–93 (9th Cir. 1983).  Euro Office's original cross-complaint included a similarly

17  deficient breach of contract claim in that Euro Office failed to allege that Lloyd's conduct

18  breached any contractual provision.  Despite the Court's specific instructions as to the claim's

19  insufficiency, Euro Office again failed to allege facts that state a claim for relief and there is

20  nothing in its opposition—or the contract itself—that suggests it can cure this defect.  The breach

21  of contract claim is accordingly dismissed without leave to amend.

22  **D.      Intentional Interference with Prospective Economic Advantage**

23          To state a claim for intentional interference with prospective economic advantage Euro

24  Office must allege: (1) an economic relationship between Euro Office and some third party, with

25  the probability of future economic benefit to Euro Office; (2) knowledge of Lloyd and Ventor of

26  the relationship; (3) an intentional wrongful act on the part of Lloyd and Ventor designed to

27  disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to Euro

28  Office proximately caused by the acts of Lloyd and Ventor.  *See Korea Supply Co. v. Lockheed*

United States District Court
Northern District of California

*Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003); *see also Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392-93 (1995).  Euro Office's burden includes pleading and proving "that [Lloyd and Ventor] not only knowingly interfered with [Euro Office's] expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Della Penna*, 11 Cal. 4th at 393.

Lloyd and Ventor argue that this claim fails because the FACC alleges that the business relationship between Euro Office and Euro Office Ergonomi AB ended February 2010 when Euro Office's assets were transferred to Euro Office Ergonomi AB; thus, Lloyd and Ventor could not have interfered in this relationship when they allegedly converted Euro Office Ergonomi AB's property in 2013.  The Court is not persuaded.  Lloyd and Ventor's argument ignores the allegations concerning Euro Office Ergonomi AB's unfulfilled obligation to pay off Euro Office's liabilities.  (Dkt. No. 17 ¶¶ 25, 28-30.)  The FACC adequately alleges that this obligation remained unfulfilled—that is, a business relationship existed between Euro Office and Euro Office Ergonomi AB—in 2013 when the alleged conversion took place.

Lloyd and Ventor also appear to argue that the claim fails because the assets that are alleged to have been converted belonged to Euro Office Ergonomi AB, not Euro Office.  Lloyd and Ventor, however, ignore Euro Office's allegation that the conversion of Euro Office Ergonomi AB's assets prevented, or at least hindered, Euro Office Ergonomi AB from paying down Euro Office's liabilities.  The alleged interference with the latter transaction is the basis for the claim.

Lloyd and Ventor's motion to dismiss the third cause of action is accordingly DENIED.

### CONCLUSION

For the reasons stated above, Lloyd and Ventor's motion to dismiss the FACC is GRANTED in part and DENIED in part.  The breach of contract claim is dismissed with prejudice.  Lloyd and Ventor have 20 days from the date of this Order to answer the FACC.

**IT IS SO ORDERED.**

Dated: June 24, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California